# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAROL TOKASH,

    Plaintiff,

v.

FOXCO INSURANCE MANAGEMENT SERVICES, INC., and EXCALIBUR INSURANCE MANAGEMENT SERVICES, INC.,

    Defendants.

CIVIL ACTION NO. 3:CV-10-872

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff Carol Tokash's ("Tokash") Motion for New Trial Pursuant to Fed. R. Civ. P. 59. (Doc. 80.) Following a four-day trial, the jury returned a verdict in favor of Defendants Foxco Insurance Management Services, Inc. and Excalibur Insurance Management Services, Inc. (collectively "Excalibur") on Plaintiff's age discrimination claims brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 955, *et seq*. In support of her request for a new trial, Tokash argues that the verdict was against the weight of the evidence, and, additionally, that the failure to provide three proposed instructions confused the jury. Because the jury's verdict did not result in a miscarriage of justice or shock the conscious, and because declining to provide the three proposed jury instructions was not erroneous, the request for a new trial will be denied.

## I. Background

As the parties have already been through a trial on this matter, a recount of only those facts relevant to the resolution of the instant motion will be provided. Carol Tokash was born on January 1, 1942. On October 3, 1994, Tokash was hired by Excalibur as an

insurance underwriter. As an underwriter, Tokash was responsible for writing policy renewals and preparing new business policies.

During Tokash's employment with Excalibur, the company had a handbook entitled "Employee Manual of Company Rules and Benefits" (the "Manual"). The July 1996 version of the Manual contained the following provision: "All employees will be subject to compulsory retirement upon attaining age 65." The Manual also contained a job description for a commercial underwriter: "A Pennsylvania insurance license is a must for any employee who would consider an underwriting position. Experience is also a must for this type of position. All employees who are in this department will have a much better than average knowledge of the insurance industry. . . ."

Due to the mandatory retirement provision in the Manual, Tokash became concerned that she would be subject to compulsory retirement when she attained the age of sixty-five (65) on January 1, 2007. As such, she approached Charles "Chuck" Volpe, Jr., President and CEO of Excalibur and Foxco, to inquire as to whether she would be forced to retire. According to Tokash, Volpe said it was her call whether to retire. Tokash continued working for Excalibur after her sixty-fifth (65th) birthday.

Around March 2008, Volpe became aware that the companies had lost a significant amount of revenue during the first quarter of that year. To limit the losses to Excalibur, Volpe determined that layoffs were necessary for the financial health of the business. Five employees, including Tokash, were notified that they would be terminated. Tokash, although being notified of her termination in March 2008, was permitted to continue working until August 2008. During this period, however, Tokash was required to train a younger employee, Laura Moore, who was also laid off. Moore, however, was going to be brought back in August 2008 to perform both her duties and Tokash's duties. Moore was thirty-two years younger than Tokash. Prior to Tokash's ultimate separation from Excalibur in August

2

2008, she provided Moore with step-by-step on instructions how to write insurance policies, as well as showing her how to prepare loss runs, statements of values, and equipment breakdowns. Tokash's last day with Excalibur was on August 29, 2008. Since Moore returned to work for Excalibur in August 2008, Excalibur's work force was reduced by a total of four employees.

As a result of the foregoing events, Tokash commenced this action in April 2010 asserting claims for her alleged unlawful termination. Ultimately, the action proceeded to trial on Tokash's age discrimination claims. The jury, following a four-day trial, returned a verdict for Excalibur on both the ADEA and PHRA claims. Tokash filed a timely motion for new trial. Tokash argues that a new trial is warranted in this action because the jury's verdict was against the weight of the evidence and because the jury instructions affected her substantial rights. The motion for new trial has now been fully briefed and is ripe for disposition.

## II. Discussion

### A. Legal Standard

Rule 59 of the Federal Rules of Civil Procedure provides:

(1) **Grounds for New Trial**. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . .

Fed. R. Civ. P. 59(a)(1)(A).

"The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blanch v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S. Ct. 188, 190, 66 L. Ed. 2d 193 (1980)). The scope of that discretion, however, is dependent on the basis of the motion for a new trial. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1992).

3

When the motion asserts that the verdict is against the weight of the evidence, the court's discretion is narrow: it may only grant the motion "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991) (citing *EEOC v. Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989)). This stringent standard for a new trial exists "'to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury.'" *William A. Graham Co. v. Haughey*, 646 F.3d 138, 143 (3d Cir. 2011) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996)); *M.B. ex rel. T.B. v. City of Phila.*, 128 F. App'x 217, 229 (3d Cir. 2005) ("The district court cannot substitute its view of the facts and credibility of the witnesses for that of the jury."). "Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations." *Williamson*, 926 F.2d at 1352.

Conversely, the court's discretion is far broader "when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, *e.g.* evidentiary rulings or prejudicial statements made by counsel." *Klein*, 992 F.2d at 1289–90 (internal citations omitted). "When a litigant moves for a new trial based upon jury instructions that allegedly contained legal error, the district court is tasked with determining whether the instructions, in their entirety, properly apprised the jury of the issues and applicable law." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 692 F. Supp. 2d 487, 523 (M.D. Pa. 2010) (citing *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009). Similarly, "[w]hen determining whether to grant a new trial for failure to give a properly requested jury instruction, the court must determine 'whether the charge, taken as a whole, properly apprised the jury of the issues and the applicable law.'" Otos Tech., Co.

v. OGK Am., Inc., No. 03-1979, 2007 WL 2374995, at *3 (D. N.J. Aug. 13, 2007) (quoting *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 275 (3d Cir.1998). "If the instruction in question was erroneous, the court must then ascertain 'whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Arlington Indus.*, 692 F. Supp. 2d at 523 (quoting *Bhaya v. Westinghouse Elec. Corp.*, 709 F.Supp. 600, 601 (E.D. Pa. 1989); *see also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

**B.    Tokash's Motion for New Trial**

Tokash argues that a new trial is warranted for two reasons. First, Tokash asserts that the jury's verdict was against the weight of the evidence presented at trial. Second, Tokash contends that the failure to provide three requested jury instructions "substantially contributed to a confusing, unbalanced and complicated sea for the jury to navigate and ultimately promoted this unsupportable and unjust verdict." For the reasons that follow, Tokash's motion will be denied.

**1.    The Weight of the Evidence**

Tokash's first argument for a new trial is based on her claim that the jury's verdict on the ADEA and PHRA claims was against the weight of the evidence.[1] The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 621(a)(1). Of course, the purpose of this statue is to "prohibit age discrimination in employment" and "to promote employment of older persons

---

[1] "There is no need to differential between [Tokash's] ADEA and PHRA claims because, for our purposes, the same analysis is used for both." *Connors v. Chrylser Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) (citations omitted).

5

based on their ability rather than age." 29 U.S.C. § 621(b).

To succeed on an ADEA claim, a plaintiff must make a showing either by "(1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 261, 109 S. Ct. 1775, 1796, 104 L. Ed. 2d 268 (1989), or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas*." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (footnote omitted, referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Where indirect evidence is being relied upon, it is appropriate to proceed under the *McDonnell Douglas* analysis. *Id*. Here, the evidence presented at trial, as well as the arguments advanced by Tokash in support of her motion for new trial, demonstrate that her claims are most appropriately analyzed under an indirect evidence theory.

To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate "(1) she is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that her replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004) (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)). Once this is established, the employer then bears the burden of production[2]

---

[2] Of course, the burden of *persuasion* must always lie with the plaintiff. *Smith*, 589 F.3d at 690. In *Gross v. FBL Financial Services*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), the Supreme Court held that the ADEA does not allow for mixed-motive age discrimination claims, in other words, that a plaintiff must prove that "age was the 'but-for' cause of the challenged employer decision." *Id*. at 178, 129 S. Ct. 2343. Such 'but-for' causation must be established by a preponderance of the evidence, either direct or circumstantial. *Id.* at 177, 129 S. Ct. 2343. The Supreme Court then rejected the burden shifting encouraged under the *Price Waterhouse* analysis: "The burden of persuasion does

6

in order "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)). "This burden is 'relatively light' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

If the employer satisfies his burden, "the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Smith*, 589 F.3d at 690 (citing *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995)). Proving pretext "'places a difficult burden on the plaintiff'" and requires the plaintiff to put forward "'such weaknesses, implausabilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Carlson v. Twp. of Lower Alloways Creek*, 452 F. App'x 95, 100 (3d Cir. 2011) (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). Ultimately, the plaintiff bears the burden "to show age discrimination was the but-for cause of the complained-of action." *Wardlaw v. City of Phila.*, 378 F. App'x 222, 226 (3d Cir. 2010) (citing *Gross*, 557 U.S. at 178, 129 S. Ct.

> not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180, 129 S. Ct. 2343 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)). In light of *Gross*, the Court of Appeals has determined that while shifting the burden of persuasion would be inappropriate, *McDonnell Douglas* only shifts "the burden of production (*i.e.*, of going forward) . . . to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith*, 589 F.3d at 691. "Hence, *Gross*, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims." *Id.*

7

2343; *Smith*, 589 F.3d at 691).

Here, Excalibur does not appear to seriously contest that Tokash established a *prima facie* case of age discrimination. At trial, Tokash demonstrated that she was over forty (40) years old when she was terminated, that she was qualified as an underwriter, and that her replacement was thirty-two (32) years her junior. *See Potence*, 357 F.3d at 370. However, what the parties vigorously dispute is whether Excalibur's proffered business reasons for terminating Tokash and not Moore were legitimate, or, whether as claimed by Tokash, simply pretext for illegal age discrimination.

According to the testimony of Chuck Volpe, Tokash was selected as one of the employees to be terminated in March 2008 based upon the recommendation of her supervisor, Linda Williams. Williams recommended that Laura Moore be retained and Tokash terminated because she believed that Moore would be better able to assist with regulatory reporting while, at the same time, absorbing Tokash's underwriting responsibilities. This was necessary because Excalibur was only reducing the size of its workforce, not the amount of work performed or services offered. Williams explained her recommendation was attributable to her belief that Moore had a better ability to learn new tasks quickly, while she had concerns about Tokash's capacity to grasp new concepts. Williams further testified that although Tokash was extremely good with routine renewals, she struggled when new or unusual issues developed. Additionally, Volpe testified that Tokash was selected for layoff because of complaints from board members on the Housing and Redevelopment Authority Insurance Exchange.

Tokash disputes Excalibur's stated justifications. Preliminarily, Tokash argues that it was undisputed by Excalibur's employees that Moore was not qualified to perform Tokash's job functions, as Moore had no underwriting experience and she did not have an insurance license. Tokash, on the other hand, had an insurance license, as well as

8

fourteen (14) years experience as an Excalibur underwriter.

As to Excalibur's stated reason for replacing Tokash with Moore, she argues that this justification was false for various reasons. First, after Moore returned from her temporary layoff in August 2008, she did not perform her regulatory reporting functions. Rather, Bonnie Volpe-Abdalla was trained to assist with regulatory reporting. Moore, however, only returned to work for approximately two months before she elected to leave her position with Excalibur to pursue a different employment opportunity. Excalibur also disputes Tokash's assertion that Volpe-Abdalla performed the regulatory reporting work, as Williams testified that she performed much of the regulatory reporting functions during Moore's layoff by working extra hours. Further, Excalibur contends that the testimony established that Volpe-Abdalla was trained to perform certain regulatory reporting functions to assist during peak renewal times which occurred periodically throughout the year. And, Excalibur asserts that Volpe-Abdalla only performed regulatory reporting upon Moore's return because of the backlog of insurance renewals that needed to be sent out.

Second, Tokash claims that the stated reason for her termination was pretextual because Excalibur selected her to train Moore. Tokash argues that it is "implausible that an employer who sincerely believed one employee was an inferior performer to another would allow the inferior employee to train the superior one." Excalibur, however, argues that Tokash was never referred to as an inferior employee at trial. Instead, she was chosen to train Moore in her daily, repetitive duties, but not in more complicated areas such as non-profits.

Third, Tokash argues that the mandatory retirement provision in Excalibur's Manual demonstrated that the stated justifications for termination were pretext for unlawful age discrimination. Tokash contends that the Manual was provided to all employees and that management became aware of the mandatory retirement provision, yet, there was no

evidence presented that Excalibur ever disclaimed the retirement provision. Conversely, Excalibur emphasizes that no testimony was presented at trial that Excalibur ever enforced the retirement provision. And, when Tokash brought the provision to the attention of Volpe, he informed her that it was her call if she wished to continue working.

Lastly, Tokash asserts that the stated reason for her termination was false based on statements made to her in 2008 by Williams and Volpe-Abdalla. According to Tokash, after she learned she would be laid off, Williams stated, "it's a shame you and Joe got caught in it because of your age." (Doc. 83, Tr. 211:16-17.) Williams denied making that statement, and she also testified that she never discussed with Tokash age as a basis for her termination from employment. (*Id*. at 105:25-106:7.) Despite Williams' denial of this statement, Tokash claims that her testimony should be disregarded because of her lack of credibility. In particular, Tokash contends that Williams' credibility was severely damaged based on her testimony that Moore volunteered to be laid off in 2008 because Moore subsequently testified that her layoff was involuntary.

Tokash also testified that in September 2008, shortly after her last day at Excalibur, she had a telephone conversation with Volpe-Abdalla regarding Tokash's unemployment compensation application. During the conversation, Tokash testified that Volpe-Abdalla questioned her as to why she would want to continue working since ninety percent (90%) of people her age are retired. (Doc. 84, Tr. 8:21-22.) Tokash also testified that Volpe-Abdalla stated during that conversation that she went a year and a half past the mandatory retirement age. (*Id*. at 9:6-7.) Although Volpe-Abdalla did not return to the stand and rebut Tokash's testimony, Excalibur argues that Volpe-Abdalla testified that she had no involvement in the management of Excalibur, that she did not have knowledge of the layoffs in 2008, and that she believed Tokash retired.

After a careful review of the record, the request for a new trial on the basis that the

10

jury's verdict was against the weight of the evidence will be denied. Although Tokash characterizes the evidence as entirely on her side, Excalibur presented sufficient evidence at trial that Tokash was terminated for a nondiscriminatory reason. In reaching this conclusion, the jury reasonably could have concluded that Excalibur's justification for terminating Tokash was based on a legitimate business belief that Laura Moore was better suited to handle multiple job functions, or, alternatively, that Tokash failed to establish that age was the "but-for" cause of her termination. Thus, the verdict was not so against the weight of the evidence as to merit the exercise of my discretion to grant a new trial. Furthermore, Tokash's arguments regarding the credibility of Excalibur's witnesses do not satisfy the stringent standard to justify the substitution of my "judgment of the facts and the credibility of the witnesses for that of the jury." *Williamson*, 926 F.2d at 1352 (quoting *Lind*, 278 F.2d at 90).

On this record a jury could have reached the opposite conclusion and found in favor of Tokash. But, "[w]here evidence is in conflict and subject to two interpretations, the trial judge should be reluctant to grant a new trial." *Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir. 1993) (citing *GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.*, 474 F. Supp. 1357, 1362 (W.D. Pa. 1979), *aff'd*, 622 F.2d 578 (3d Cir. 1980)). Here, because the jury's verdict has not "resulted in a miscarriage of justice," nor does it "cr[y] out to be overturned or shock[ ] [the] conscience," *id*. at 1290, a new trial will not be granted.

### 2. Omitted Proposed Jury Instructions

With respect to the instructions given to the jury, Tokash argues that the failure to provide Proposed Jury Instructions Four, Five, and Eight warrants the grant of a new trial. Finding no error affecting Tokash's substantial rights, the request for a new trial will be denied.

### a.     Proposed Pretext and Falsity Instructions

Tokash argues that the failure to give her proposed pretext instruction based on *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994),[3] "left the instructions on pretext unbalanced due to an over-emphasis on the protection of Defendants' business judgment." I disagree.

Tokash's Proposed Jury Instruction Four requested the jury be instructed as follows:

> You may infer that Foxco and Excalibur acted with discriminatory intent on account of age if you find weaknesses, implausibilities, inconsistencies, incoherences or contradictions in its stated reasons for termination of Ms. Tokash.

(Doc. 59.)  Proposed Jury Instruction Eight sought an instruction on falsity:

> If you find that the employer's explanation is false, then you may find that the employer is dissembling to cover up a discriminatory purpose.

(*Id*.) Tokash asserts that by excluding these instructions "as surplusage, but including three separate sentences on the sanctity of 'business judgment,' (compared to a single sentence on disbelief of reasons), the jury was given a skewed vision of the application of the civil rights laws which prohibit age discrimination."

Reviewing the instructions in their entirety, they were neither unbalanced nor skewed. With regard to the ADEA disparate treatment instruction, the jury was instructed as follows:

> In this case, Ms. Tokash is alleging that she was terminated by Excalibur.  In order for Ms. Tokash to recover on a discrimination claim against Excalibur, Ms. Tokash must prove that Excalibur intentionally discriminated against her.
>
> This means that Ms. Tokash must prove that her age was a determinative factor in Excalibur's decision to terminate her.  To prevail on this claim, Ms. Tokash must prove both of the following elements by a preponderance of the evidence.  First, that Excalibur terminated Ms. Tokash; and, second, that Ms. Tokash's age was a determinative factor in Excalibur's decision.
>
> Although Ms. Tokash must prove that Excalibur acted with the intent to discriminate, she is not required to prove that Excalibur acted with a particular

---

[3]     Although *Fuentes* involved a claim of national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., and not the ADEA, Fuentes has been applied to ADEA claims. *See, e.g., Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir. 1997).

12

> intent to violate her federal civil rights. Moreover, Ms. Tokash is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.
>
> Excalibur has given a non-discriminatory reason for its termination of Ms. Tokash. If you disbelieve Excalibur's explanation for its conduct, then you may but need not find that Ms. Tokash has proven intentional discrimination. In determining whether Excalibur's stated reason for its actions was pretext or excuse for discrimination, you may not question Excalibur's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of Excalibur or believe it is harsh or unreasonable. You are not to consider Excalibur's wisdom. However, you may consider whether Excalibur's reasoning is merely a cover-up for discrimination.
>
> In this case Ms. Tokash is claiming that she was replaced by a younger employee, Laura Moore. It is not necessary for Ms. Tokash's replacement to be under 40 years of age. The question is whether Ms. Moore is substantially younger than Ms. Tokash. Although replacement by someone younger, without more, will not give rise to an inference of age discrimination, a substantial difference in ages may be circumstantial evidence that gives rise to that inference. Ultimately, you must decide whether Ms. Tokash has proven that her age was a determinative factor in Excalibur's decision to terminate her. Determinative factor means that if not for, or but for Ms. Tokash's age her termination would not have occurred.

(Doc. 85, Tr. 116:7-117:24.)

While Tokash argues that these instructions were unbalanced since only one sentence was provided regarding pretext compared with three sentences discussing business judgment, absent from Tokash's restatement of the instructions is the final sentence given regarding pretext and business judgment: "However, you may consider whether Excalibur's reasoning is merely a cover-up for discrimination." (*Id*. at 117:10-12.) This instruction accurately informed the jury that they could disbelieve Excalibur's stated business rationale for Tokash's termination, and, instead, could find that the true justification for her termination was her age.

In addition, Tokash's proposed *Fuentes* instruction did not seek a complete instruction pursuant to the Third Circuit's decision. *See Fuentes*, 32 F.3d at 765. Specifically, the relevant passage in *Fuentes* states:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses,

13

> implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Id*. (internal citations and quotations omitted). While Tokash's proposed instruction that the jury "may infer that Foxco and Excalibur acted with discriminatory intent on account of age if you find weaknesses, implausibilities, inconsistencies, incoherences or contradictions in its stated reasons for termination of Ms. Tokash," (Doc. 59), largely mirrors the second sentence in the above-quoted passage, this is an incomplete instruction based on *Fuentes*, as it omits the court's statement that "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

Rather than instructing the jury on Tokash's ADEA claim in the manner she specifically requested, the jury was instructed on the elements of an ADEA claim, pretext, and business judgment patterned after the Third Circuit's model instructions. *See Third Circuit Model Jury Instructions: Civil* § 8.1.1 (2011). While the instruction was not the same as that proposed by Tokash, it was consistent with her requested instructions. First, the jury was instructed that "if you disbelieve Excalibur's explanation for its conduct, then you may but need not find that Ms. Tokash has proven intentional discrimination." (Doc. 85, Tr. 117:2-4.) The second pretext/falsity instruction informed the jury that "you may consider whether Excalibur's reasoning is merely a cover-up for discrimination." (*Id*. at 117:10-12.) Although the provided instructions did not use the language specifically requested by Tokash, "[a] trial court has substantial discretion with respect to specific wording of jury instructions and need not give a proposed instruction so long as the essential points are covered by the instructions that are given." *Alicea v. Ralston*, 279 F. App'x 179, 182 (3d Cir. 2008). Likewise, "no litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its preference." *Douglas v. Owen*, 50 F.3d 1226, 1233 (3d Cir. 1995). Here, "taken as a whole, the instruction properly apprised the jury of the issues and the applicable law," *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009)

(citation omitted), and the given ADEA instructions were not "capable of confusing and thereby misleading the jury." *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984) (citing *Idzojtic v. Pa. R.R. Co.*, 431 F.2d 1029, 1036 (3d Cir. 1970) (Aldisert, J., dissenting)). Tokash's request for a new trial based on the failure to provide Proposed Jury Instructions Four and Eight will be denied.

### b. **Proposed Mandatory Retirement Instruction**

Lastly, Tokash claims that the refusal to provide her requested mandatory retirement policy instruction, Proposed Jury Instruction Five, (Doc. 59), warrants the grant of a new trial. Proposed Jury Instruction Five requested an instruction that "it is illegal for an employer to publish in its employee handbook any provision requiring its employees to retire upon achieving a particular age." (*Id*.)[4]

Whether to provide the retirement policy instruction was discussed at the jury conference prior to closing arguments. At that time, I explained that the jury would not be given the mandatory retirement policy instruction because the key issue was whether Excalibur discriminated against Tokash due to her age. And, as the parties disputed whether the policy was followed, the provision did not conclusively establish that Excalibur discriminated against Tokash. Since the proposed instruction tended to make the jury charge "lopsided" and could "mislead the jury," I determined that the jury "might place undue significance on [the instruction] in terms of their ultimate determination." (Doc. 85, 7:6-16.)

Nothing in Tokash's post-trial submissions convinces me that I erred in declining to provide the proposed instruction. As I noted at the charge conference, the jury was tasked

---

[4] The ADEA provides that "[i]t shall be unlawful for an employer, . . . to print or publish, . . . any notice or advertisement relating to employment by such an employer . . . indicating any preference, limitation, specification, or discrimination, based on age." 29 U.S.C. § 623(e). Likewise, under the PHRA, it is an unlawful practice for an employer to "[p]rint or publish . . . any notice or advertisement relating to employment or membership indicating any preference, limitation, specification or discrimination based upon . . . age, . . . ." 43 Pa. Stat. Ann. § 955(b)(2).

15

with determining whether Tokash established that age was the "but-for" cause in Excalibur's decision to terminate her. Because Tokash's proposed instruction "was capable of confusing and thereby misleading the jury" in making this determination, *Fischbach*, 750 F.2d at 1195, it would have been improper to provide the requested instruction.

Based on the foregoing, Tokash has failed to show the existence of any errors in the instructions provided to the jury. And, to the extent that any errors existed, they were not "so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Arlington Indus.*, 692 F. Supp. 2d at 523.

### III. Conclusion

For the above stated reasons, the motion for new trial will be denied.

An appropriate order follows.

January 11, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge